UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ISRAEL LOUIS GOODIN,

        Plaintiff,          Case No. 1:17-cv-427

v.          Honorable Gordon J. Quist

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections and Ionia Maximum Facility. The Court also will dismiss without prejudice for improper joinder the claims against Defendants Wood, Thurby, Stalbugh and Woktion. The Court will serve the complaint against Defendant Scott.

**Discussion**

I.  Factual allegations

Plaintiff Israel Louis Goodin presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison, though the actions about which he complains occurred while he was housed at the Ionia Maximum Correctional Facility (ICF). He sues the MDOC and ICF, together with the following ICF officials: Officers Amy Scott, Rebecca Wood, (unknown) Stalbugh, and (unknown) Woktion; and Prison Counselor Lloyd Thurby.

Plaintiff's extensive allegations span the time period of September 29, 2015, to the first week of January 2016. His claims range from sexual harassment to retaliation to property damage and theft to denial of grievances to inhumane conditions of confinement. Plaintiff's complaint is challenging to summarize, as is not entirely chronological and includes what appear to be repeated allegations. The Court will attempt to comprehensively describe Plaintiff's claims.

In his first set of allegations, Plaintiff complains that, in the third week of September 2015, Defendant Scott came to his cell and ordered him to remove the towel that was covering his cell window, because it was count time. When Plaintiff lifted the towel, Defendant Scott demanded to know whether Plaintiff was dressed, as he was bare-chested and close to the door. Plaintiff stepped back to show that he was wearing athletic shorts.

On September 21, 2015, Defendant Scott made a "distasteful homosexual joke" when Defendant Scott announced to others that, whenever they saw Plaintiff's window covered, he was in his cell "sticking his finger up his a- -." (Compl., ECF No. 1, PageID.4.) Plaintiff filed a grievance. On October 6, 2015, Defendant Scott called Plaintiff to the officers' station, asking Plaintiff if he wanted to talk about the grievance. Plaintiff indicated that he did not wish to talk to Scott. Scott allegedly told Plaintiff to "stick your finger up you're a- -; your [sic] a fooking idiot."

(*Id.*) Plaintiff allegedly told Defendant Scott that her conduct constituted harassment and then left the area. The following morning, Plaintiff was taken to segregation based on a misconduct ticket for threatening behavior issued by Defendant Scott, in which she claimed that Plaintiff told her, "B- -ch when I get my hands on you, I'm going to f- -king beat your [sic] a- -, then throw you down and f- - k you." (*Id.*) Plaintiff contends that he made no such statement and that the misconduct was written to retaliate against Plaintiff for filing a grievance.

Plaintiff next complains that the segregation cell to which he was taken had a toilet that did not completely flush. The cell had dirt, feces, and urine on the toilet and floor. The cell also had been sprayed with chemical agent, which Plaintiff did not realize until he attempted to clean the cell with handsoap. His face, skin and genitalia were burned by the compound. He did not receive proper cleaning supplies for two weeks.

In his next set of allegations, Plaintiff contends that, on October 13, 2015, Defendant Scott told him that she had seen the cases that Plaintiff was requesting from the law library, as well as the grievance he wrote, and she made the following threats:

> How can you look yourself in the mirror. I come to work and your [sic] trying to press a law suit. I'll make sure you'll never get out of segregation. It's your life not mine nothing going to happen to me and you will still be in the system. Look I have nothing against you, let's call it a truce . . . No! This is not a game you can win. You know I work on your [sic] side of the unit and can still write you five more tickets. I come here to do my job and you wrote a grievance on me!

(*Id.*, PageID.5.) Defendant Scott then attempted to make peace, suggesting that she had done Plaintiff a favor by keeping his Secure Pac from other inmates. Scott allegedly twice returned to Plaintiff's cell later that day, saying things like, "So we're good then right no hard feelings," and "No more lies right! We're cool." (*Id.*)

Plaintiff claims that he reported Scott's harassment to his therapist. She allegedly reported to Inspector Sanchez on two occasions. Shortly after the second report, Defendant Scott came to his cell, and signed "playing the smallest violin for all your crying." (*Id.*) She laughed and taunted Plaintiff. Plaintiff then reported the problem to his psychiatrist, after which Defendant Scott came to his window and said, "I don't care about how many of your grievances you can write all you want I can give a f- - k about a grievance . . . I'll keep on writing tickets."

On October 27, 2015, Plaintiff was moved to a different cell. Staff had to kick the door to get it to open four inches and to pry it open further with their bodies. Plaintiff was put into the cell, which had feces, urine, blood and dirt on the floor and walls. The bed and bedding had black mold, food, and human feces on it. The toilet was stagnant and the window was welded closed. Again, Plaintiff was given no cleaning supplies and was forced to use his personal washcloth and handsoap to clean the cell.

Plaintiff also alleges that, on September 29, 2015, Defendant Wood sat with Defendant Scott across from the showers while inmates were bathing. Defendant Wood denied Plaintiff a shower because he was wearing underwear or shorts in the bathing area. According to Plaintiff, he was already in the shower when Wood ordered him to leave immediately and go to his cell. Other inmates began calling to Plaintiff to leave immediately and to not rinse off, or Defendant Wood would place him in segregation. Plaintiff complains that female guards should not be in the area when male inmates are bathing.

Plaintiff makes a variety of allegations against guards who are not named as Defendants. He alleges that Officers Walker and Lahr (not Defendants) performed a cell search and took his television, purportedly because it was broken, as well as hygiene items and stationery. Plaintiff alleges that the officers actually took the property in retaliation for his complaints against

Defendant Scott. He spoke with Lieutenant Zwiker (not a Defendant) about Defendant Scott's actions, and Zwiker told Plaintiff to talk to the inspector. Zwiker also gave Plaintiff a decision of guilt on his Class-II misconduct, despite Plaintiff not having received a hearing. Plaintiff was sanctioned with 30 days' loss of privileges, and his television and electronics were confiscated. Plaintiff sought rehearing, which Deputy Warden Christiansen granted, after Plaintiff provided an extensive chronology and documentation showing that his television, if broken, was broken by officers. Lieutenant Rykse (not a Defendant) was the hearing officer on the rehearing. He found against Plaintiff, on the ground that his officers would not have given Plaintiff broken property. Rykse therefore upheld the misconduct guilty finding and the sanction. Plaintiff then requested that the property be mailed to his daughter.

After Plaintiff completed his sanction, he submitted numerous inquiries about his property, and he was advised that it could not be located. He filed a grievance. On November 2, 2015, Defendant Thurby and Officer Lemke (not a Defendant) located the television and held a contraband hearing on the television. Lemke told Plaintiff that he found nothing wrong with the television and that he would have given Plaintiff the television if he had conducted the property check. Defendant Thurby found that Plaintiff could have his television. Plaintiff complained that he still was placed in segregation. Defendant Thurby told him to be glad he had his television, he was staying in segregation.

Plaintiff was denied grievance forms by officers, including Officer Fandrick (not a Defendant), on November 10, 2015. Fandrick indicated he did not help prisoners get other officers in trouble.

On November 20, 2015, officers used chemical agents to extract an inmate from a neighboring cell. Plaintiff's cell filled with gas. Plaintiff yelled, "I can't breathe help," and he

eventually passed out on the floor of his cell. Some time passed before an officer came to his cell to deliver legal mail. The officer was wearing a gas mask and kicked Plaintiff to wake him. Plaintiff contends that officers used gas on inmates seven times while Plaintiff was in segregation, on each occasion causing him extreme distress because of the lack of ventilation.

Plaintiff requested a copy of his October 14, 2015, hearing report, explaining that staff had taken some of his documents. Hearing Investigator P. Smith (not a Defendant) denied his request.

On December 18, 2015, Defendants Stambugh[1] and Thurby came to Plaintiff's cell. Stambugh read and destroyed some of Plaintiff's legal work, notes, and letters, and then flushed them down the toilet. Thurby allegedly told other inmates that Plaintiff "sticks his hand up his ass." (*Id.*, PageID.12.) Other inmates began to refuse to shower with Plaintiff because he was a "fag." (*Id.*) For the same reason, some began to express violence toward Plaintiff in the yard.

In the first week of January, while staff was changing the cell lights, Officer Wotson (not a Defendant) told the janitors, "This guy stick his fingers up his ass and wrote a grievance about it." (*Id.*) Wotson began to make more homosexual remarks and jokes, laughing with other staff.

Plaintiff spent a total of 138 days in segregation before he was ordered released by Deputy Warden Christiansen. Plaintiff was placed in Unit 2. After 12 days in the unit, Defendant Scott worked a shift, though she did not ordinarily work in the unit. Scott said nothing to Plaintiff and did not make eye contact during count. The next morning Plaintiff was returned to segregation

---

[1] Plaintiff named the Defendant "Stambugh" in his list of Defendants. However, at some points in his complaint, he calls him "Stamburgh." The Court has used the name as provided in the list of Defendants.

until he could be transferred to another prison. Plaintiff contends that Defendant Scott must have sent him back to segregation.

For relief, Plaintiff seeks money damages.

II.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. MDOC & ICF

Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections or its individual prisons. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). ICF is merely a division of the MDOC.

Therefore, the Court dismisses the Michigan Department of Corrections and the Ionia Correctional Facility.

B. Misjoinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 CHARLES ALLEN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE CIVIL § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778. When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Michigan Dep't of Corrections*, 2007 WL 4465247, *3 (E.D. Mich. December 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have claims, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produced but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person -- say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions -- should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Correctional Center*, 136 F.3d 458, 464 (5th Cir. 1998); *Shephard v. Edwards*, 2001 WL 1681145, *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule). To allow Plaintiff to proceed with these improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions

and allow him to avoid having to incur a "strike" for purposes of by § 1915(g), should any of his claims turn out to be frivolous.

Other than the MDOC and ICF, each of whom is immune from suit, Defendant Scott is the first Defendant named in the action. She also is the first Defendant about whom Plaintiff makes factual allegations. Aside from wholly conclusory allegations that various other Defendants committed their subsequent actions for the purpose of retaliating against Plaintiff for grieving Defendant Scott,[2] Plaintiff makes no allegations against a Defendant who acted in conjunction with Defendant Scott in her alleged mistreatment of Plaintiff. As a result, no claim against any other Defendant is transactionally related to Plaintiff's claim against Defendant Scott.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("Parties may be dropped . . . by order of the court . . . of its own initiative at any stage of the action and on such terms as are just."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and

---

[2] "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, *Inc.*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV, Inc.*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV Inc.*, 467 F.3d at 846-47; *Michaels Building Co.*, 848 F.2d at 682.

In this case, Plaintiff brings claims under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

The actions about which Plaintiff complains occurred in 2015 and early 2016, well within the three-year period of limitations. Those claims are not at risk of being time-barred. The Court therefore will exercise its discretion under Rule 21 and dismiss Defendants Wood, Thurby Bugh and Woktion from the action, without prejudice to the institution of new, separate lawsuits by Plaintiff against those Defendants.[3] *See Coughlin*, 130 F.3d at 1350 ("In such a case, the court can

---

[3] As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants who are transactionally related to one another. Not all of the dismissed claims and Defendants would be properly brought in a single new action.

generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same).

      C.      Defendant Scott

Upon review, the Court concludes that Plaintiff's allegations state at least one claim against Defendant Scott. The Court therefore will order service of the complaint on Defendant Scott.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Michigan Department of Corrections and Ionia Maximum Correctional Facility will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), because they are immune from suit and not persons within the meaning of 42 U.S.C. § 1983. The Court will dismiss Defendants Wood, Thurby, Stambugh, and Woktion without prejudice on grounds of misjoinder. The Court will serve the complaint against Defendant Scott.

An Order consistent with this Opinion will be entered.


Dated: May 30, 2017                                                                /s/ Gordon J. Quist
                                                                                GORDON J. QUIST
                                                              UNITED STATES DISTRICT JUDGE