UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ISREAL LOUIS GOODIN,

        Plaintiff,

Case No. 1:17-cv-427

Hon. Gordon J. Quist

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a prisoner in the custody of the Michigan Department of Corrections (MDOC).  This matter is now before the Court on defendant Amy Scott's motion for summary judgment on the basis of exhaustion (ECF No. 10).

**I.**    **Background**

Plaintiff filed this action against seven defendants related to incidents which occurred at the Ionia Maximum Correctional Facility (ICF). The Court has dismissed all defendants from this action except for ICF Officer Amy Scott. The Court previously summarized plaintiff's relevant claims against Officer Scott as follows:

> Plaintiff's extensive allegations span the time period of September 29, 2015, to the first week of January 2016. His claims range from sexual harassment to retaliation to property damage and theft to denial of grievances to inhumane conditions of confinement. Plaintiff's complaint is challenging to summarize, as is [sic] not entirely chronological and includes what appear to be repeated allegations. The Court will attempt to comprehensively describe Plaintiff's claims.
>
> In his first set of allegations, Plaintiff complains that, in the third week of September 2015, Defendant Scott came to his cell and ordered him to remove the towel that was covering his cell window, because it was count time. When Plaintiff lifted the towel, Defendant Scott demanded to know whether Plaintiff was dressed,

1

as he was bare-chested and close to the door. Plaintiff stepped back to show that he was wearing athletic shorts.

On September 21, 2015, Defendant Scott made a "distasteful homosexual joke" when Defendant Scott announced to others that, whenever they saw Plaintiff's window covered, he was in his cell "sticking his finger up his a- -." (Compl., ECF No. 1, PageID.4.) Plaintiff filed a grievance. On October 6, 2015, Defendant Scott called Plaintiff to the officers' station, asking Plaintiff if he wanted to talk about the grievance. Plaintiff indicated that he did not wish to talk to Scott. Scott allegedly told Plaintiff to "stick your finger up you're a- -; your [sic] a fooking idiot." (*Id.*) Plaintiff allegedly told Defendant Scott that her conduct constituted harassment and then left the area. The following morning, Plaintiff was taken to segregation based on a misconduct ticket for threatening behavior issued by Defendant Scott, in which she claimed that Plaintiff told her, "B- -ch when I get my hands on you, I'm going to f- -king beat your [sic] a- -, then throw you down and f- - k you." (*Id.*) Plaintiff contends that he made no such statement and that the misconduct was written to retaliate against Plaintiff for filing a grievance.

In his next set of allegations, Plaintiff contends that, on October 13, 2015, Defendant Scott told him that she had seen the cases that Plaintiff was requesting from the law library, as well as the grievance he wrote, and she made the following threats:

> How can you look yourself in the mirror. I come to work and your [sic] trying to press a law suit. I'll make sure you'll never get out of segregation. It's your life not mine nothing going to happen to me and you will still be in the system. Look I have nothing against you, let's call it a truce . . . No! This is not a game you can win. You know I work on your [sic] side of the unit and can still write you five more tickets. I come here to do my job and you wrote a grievance on me!

(*Id.*, PageID.5.) Defendant Scott then attempted to make peace, suggesting that she had done Plaintiff a favor by keeping his Secure Pac [sic] from other inmates. Scott allegedly twice returned to Plaintiff's cell later that day, saying things like, "So we're good then right no hard feelings," and "No more lies right! We're cool." (*Id.*)

Plaintiff claims that he reported Scott's harassment to his therapist. She allegedly reported to Inspector Sanchez on two occasions. Shortly after the second report, Defendant Scott came to his cell, and signed "playing the smallest violin for all your crying." (*Id.*) She laughed and taunted Plaintiff. Plaintiff then reported the problem to his psychiatrist, after which Defendant Scott came to his window and said, "I don't care about how many of your grievances you can write all you want I can give a f- - k about a grievance . . . I'll keep on writing tickets." . . . .

2

> Plaintiff spent a total of 138 days in segregation before he was ordered released by Deputy Warden Christiansen. Plaintiff was placed in Unit 2. After 12 days in the unit, Defendant Scott worked a shift, though she did not ordinarily work in the unit. Scott said nothing to Plaintiff and did not make eye contact during count. The next morning Plaintiff was returned to segregation until he could be transferred to another prison. Plaintiff contends that Defendant Scott must have sent him back to segregation.

Opinion (ECF No. 5, PageID.34-39). With respect to retaliation, plaintiff alleged that defendant Scott initiated a retaliatory transfer on February 9, 2016, by placing plaintiff in administrative segregation until he could be transferred to another facility further away from his family. Compl. (ECF No. 1, PageID.13). Plaintiff seeks unspecified monetary damages. *Id*. at PageID.14.

## II. Defendant Officer Scott's motion for summary judgment

### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present

3

> significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.     Failure to Exhaust

#### 1.     Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Discussion

Defendant Scott has identified eleven grievances filed by plaintiff at ICF during the relevant time. However, only five grievances named Scott as required by PD 03.02.130 ¶ R. *See* Defendant's Brief (ECF No. 10, PageID.65-66); MDOC Prisoner Step III Grievance Report (ECF No. 10-3). Those grievances are: ICF-16-02-0218-28a ("218") (Scott subjected plaintiff to a retaliatory transfer); ICF-15-10-1978-17a ("1978") (Scott harassed plaintiff on October 21, 2015);

5

ICF-15-10-1979-28i ("1979") (Scott was "playing the world's smallest violin" to taunt and harass plaintiff on October 21, 2015); ICF-15-10-1896-28b ("1896") (Scott harassed plaintiff on October 6, 2015); and, ICF-15-09-1785-17c ("1785") (Scott sexually harassed plaintiff on September 21, 2015). *Id*.

With respect to the five remaining grievances, defendant Scott states that four are unexhausted: Grievances 218 and 1785 were rejected as untimely at Step II; Grievance 1979 was rejected at Step I for failure to resolve the issue with Scott; and Grievance 1896 was rejected at Step I for deficiencies (i.e., illegibility, not identifying the issue being grieved, and unsigned by the grievant). Defendant acknowledges that Grievance 1978, the only grievance not rejected at Step I, is properly before the Court. Defendant's Brief at PageID.71.

For his part, plaintiff contests defendant's claims and refers to three other grievances: ICF-15-11-2028-28e ("2028") (denial of access to the courts); ICF-15-11-2050-28c ("2050") (inhumane living conditions); and ICF-15-12-2222-28b ("2222") (poor living conditions).

    **a.**    **Grievance 218**

Grievance 218 involved an incident date of February 9, 2016, in which plaintiff alleged that defendant Scott engaged in a retaliatory transfer by placing him in administrative segregation until he could be transferred to another facility. Grievance 218 (ECF No. 10-3, PageID.92). Plaintiff claimed that the transfer was in retaliation for grievances he filed against Scott in September and October 2015. *Id*. In his complaint (as well as his Step II and Step III appeals), plaintiff alleged that Scott orchestrated the transfer by placing a SPON (Special Problem Offender Notification) on him.[1] *Id*. at PageID.90, 92; Compl. at PageID.13. The MDOC rejected

---

[1] "A Special Problem Offender Notification is used to document those situations where an offender is considered a threat to the safety of another offender or a Michigan Department of Corrections' employee, or a threat to the order

plaintiff's Step II appeal of Grievance 218 as untimely because plaintiff was sent a response to the grievance on March 1, 2016 and failed to file his Step II appeal within 10 days after receiving the Step I response, or within 10 business days after the response was due. *Id*. at PageID.91. Plaintiff did not submit a Step II appeal until more than three months later on June 17, 2016. *Id*. at PageID.90.

Plaintiff contends that his Step II appeal should not have been rejected as untimely because he was transferred to Marquette Branch Prison (MBP) on February 19, 2016, the same date the grievance coordinator received his Step I grievance. Plaintiff's Response (ECF No. 27, PageID.233). In his supporting declaration, plaintiff stated that he was transferred to MBP on February 19, 2016, and that "I did not receive the rejection of Grievance #ICF-1602-0218-28a for more than 14 days after arriving at MBP." Plaintiff's Decl. (ECF No. 27-1, PageID.250). While plaintiff filed a copy of a handwritten letter dated March 14, 2016 addressed to "Deputy Scheibner" at ICF, there is no evidence establishing if and when he sent the letter. *See* Response at PageID.233; Letter (ECF No. 27-1, PageID.253). In addition, plaintiff does not account for the nearly three months that elapsed between the time he allegedly requested the Step II appeal form on March 14, 2016 and the time he actually submitted it on June 17, 2016.

Based on this record, the Court concludes that a question of fact exists as to whether the MDOC extended the filing date, because the Step II appeal form sent to plaintiff explicitly advised him that:

> Your appeal should be directed to GC (ICF) by 6-22-16. If it is not submitted by this date, it will be considered ~~terminated~~ untimely.

---

or security of the facility. *See* Mich. Dep't of Corr. Policy Directive 03.03.110, ¶ E (effective 5/20/02)." *Blevins v. Jones*, No. 5:06-CV-16, 2006 WL 374253, at *1 (W.D. Mich. Feb. 17, 2006).

7

Exhibit 1 at PageID.90 (strikeout in original). While the Step II appeal was received at ICF on June 28, 2016, plaintiff, who was incarcerated at MBP at the time, dated it June 17, 2016. Based on this record, a question of fact exists with respect to whether plaintiff failed to properly exhaust Grievance 218. Accordingly, defendant's motion should be denied with respect to this grievance.

      **b.**    **Grievance 1978**

Grievance 1978 involved defendant Scott's alleged "taunting and harassment" of plaintiff on October 21, 2015:

> Ofc. A. S. Scott first round [sic] on B-Lower after Goodin [plaintiff] came back from talking to psychologist Sleight OFC. Scott came to Goodin [sic] cell (3-60) continuing to harass Mr. Goodin saying "I don't [sic] care about your grievances you can write all you want I can give a fuck about a grievance. You can fuck off you keep on writing them and I'll keep on writing you tickets." Then she closed the window flap. Ofc. A. S. Scott was at Goodins [sic] door for 1 minute to an [sic] minute and a half. This is the second time this day in less than two hours that Ofc. A. S. Scott came to Goodin [sic] cell taunting and continuing to do harassment.

Grievance 1978 (ECF No. 10-3, PageID.112).

Plaintiff included this claim in his complaint as follows:

> Approximately between 1100 and 1230 hours Mrs. Sleight, Mr. Goodin [sic] psychiatrist had a counsel with Mr. Goodin. Mr. Goodin informed Mrs. Sleight of Ofc. Amy Scott taunting and harassing him causing him anxieties. Psychiatrist Sleight said she refuse [sic] to get involved. Mr. Goodin returned to his cell 3-60 and Ofc. Amy Scott opened his window flap and said I don't [sic] care about how many of your grievances [sic] you can write all you want I can give a F__K about a grievance. Ofc. Scott leaned into the window flap and said you can F__K off! You keep on writing them and I'll keep on writing tickets. Ofc. Scott was at Goodin [sic] cell for about a minute to a minute in a [sic] half.

Compl. (ECF No. 1, PageID.6). Defendant concedes that plaintiff exhausted this grievance against her. Defendant's Brief (ECF No. 10, PageID.71).

      **c.**    **Grievance 1979**

In this grievance, plaintiff stated that on October 21, 2015, defendant Scott came to his cell, rubbed her thumb and forefinger together, and told plaintiff that it was her "playing the

world's smallest violin." Grievance 1979 (ECF No. 10-3, PageID.123). The MDOC rejected Grievance 1979 because plaintiff failed to attempt to resolve the matter prior to filing the grievance. *Id*. at PageID.124. Plaintiff stated that he did not resolve this issue with defendant Scott because he had a call out "to talk right afterwards." *Id*. at PageID.123. In his declaration, plaintiff stated that when he went to say something to Scott about her degrading action, she slammed the window cover in his face, and "the only thing I could do was talk with my psychiatrist about the matter, and request that my psychiatrist talk to Defendant's supervisor." Plaintiff's Decl. at PageID.250. Defendant points out that plaintiff did not provide any explanation for his failure to resolve the issue with defendant at some later time within the two business days that he had to resolve the issue. *See* Policy Directive 03.02.130 ¶ P. Based on this record, plaintiff failed to properly exhaust Grievance 1979.

        **d.**     **Grievance 1896**

In this grievance, plaintiff appears to state that defendant Scott saw him on October 6, 2015, and said (in his words) "what your problay did you mistake me for somebody else with that grievance" and "I told you to sick your finger up your ass your a fucking idiot." Grievance 1896 (ECF No. 10-3, PageID.139). The MDOC rejected Grievance 1896 at Step I as "vague/illegible" and because plaintiff failed to sign it. *Id*. at PageID.140. Plaintiff contends that it is legible and that Sgt. Greenfield stopped him from signing the grievance "when given a direct order to be placed in hand cuffs [sic]." Plaintiff's Response at PageID.237-238; Grievance 1896 at PageID.138. Plaintiff provided no evidence to support a claim that Sgt. Greenfield prevented him from signing this grievance, which plaintiff stated that he filed on the same day as the incident. Furthermore, the grievance was properly rejected pursuant to Policy Directive 03.02.130 ¶ R which

9

states that "[t]he forms may be completed by hand or by typewriter; however handwriting must be legible."  Accordingly, the record reflects that plaintiff failed to properly exhaust Grievance 1896.

    e.  **Grievance 1785**

Grievance 1785 concerned an incident which occurred on September 21, 2015, and complained of staff-on-prisoner sexual harassment. The exhibits do not include a copy of the original grievance or the Step I response.  However, based on plaintiff's complaint, this is the only grievance which could have supported plaintiff's claim that defendant Scott made a "distasteful homosexual joke" on September 21, 2015:

> On Monday approximately 1400 hours during laundry pick [sic] September 21, 2015, Mr. Goodin became part of a distasteful joke by Ofc. Amy Scott.  She was telling inmate [sic] that when ever they see Goodin [sic] window cover his [sic] in there sticking his finger up his A- -.  Mr. Goodin is a heterosexual and because of his Vedic faith in Hare Krishna do [sic] not take part in illicit sexual activity. Mr. Goodin was offended and wrote a grievance on Ofc. Amy Scott.

Compl. at PageID.4.

A memorandum dated October 12, 2015 states that the grievance was referred for a determination under the Prison Rape Elimination Act (PREA) guidelines with instructions on how to proceed:

> Your Step I grievance has been received and determined to possibly fall under the scope of the Prison Rape Elimination Act (PREA). As such, it has been referred for determination and possible investigation under PREA guidelines. The grievance process is hereby suspended pending a decision. Once a decision is received by this office, you will be forwarded a response from this office on your Step I grievance and the suspension of the grievance process will be lifted. You may then pursue your issues to Step II and III consistent with the requirements of PD 03.02.130 "Prisoner /Parolee Grievances["].

Memorandum (ECF No. 10-3, PageID.150).

The MDOC subsequently provided plaintiff a copy of a Step II appeal form which advised him that the appeal should be submitted by October 19, 2015.  Grievance 1785 (ECF No.

10

10-3, PageID.147). While plaintiff stated that he submitted the Step II appeal on October 13, 2015, it was marked as received by the Grievance Coordinator on October 27, 2015 and by the respondent on October 30, 2015. *Id*. In addition, plaintiff's Step II appeal included matters which occurred after the September 21, 2015 incident (e.g., that on October 6, 2015 defendant Scott had plaintiff placed in segregation, and that on October 13, 2015 Scott threatened plaintiff, allegedly stating, among other things that she "will make sure you [plaintiff] never get out of seg"). *Id*. at PageID.147. The Step II appeal was rejected as untimely, with the rejection upheld at Step III. *Id*. at PageID.146, 149.

On October 29, 2015, Inspector J. Sanchez issued investigative findings which stated that the date of the incident was September 21, 2015 and that:

> A thorough investigation into your complaint was completed on 10/21/15. The Investigation found NO EVIDENCE to support that the alleged conduct occurred.

Findings (ECF No. 10-3, PageID.151).

Plaintiff contends that his Step II appeal was timely, stating in a declaration that:

> On 10/13/15, I placed my Step II form in my door and it was picked up by one of the corrections officers making their count rounds. That is how you mailed your letter and institutional mail. I did nothing different with *Grievance #ICF-1509-1785-17c* as I would have done with any other grievance. I would place it in the door to be picked up by an officer right after writing it.

Goodin Decl. (ECF No. 27-1, PageID.250). Genuine issues of material fact exist with respect to the timeliness of plaintiff's Step II appeal. Accordingly, defendant's motion should be denied with respect to Grievance 1785.

    f.  **Grievance 2028**

This grievance is not directed at defendant or any particular person. It involves plaintiff's claim that he was denied access to the court and government facilities, apparently because he could not obtain addresses for the following entities: MDOC Internal Affairs Division;

11

Ionia County Prosecutor; "Michigan State Police closest to Ionia"; Ionia County Sheriff's Department; and the Federal Bureau of Investigation. Grievance 2028 (ECF No. 10-3, PageID.129. While plaintiff stated at the end of the grievance that "the facility place [sic] me in segregation for writing a sexual harassment grievance on Ofc. Amy S. Scott," there is no claim against Scott for denying plaintiff access to the court or government facilities. *Id*. Accordingly, this grievance does not properly exhaust any claim against defendant Scott.

### g. Grievance 2050

In this grievance filed on October 27, 2015, plaintiff stated "Warden at fault" for "inhuman living condition crule and unusual punishment". Grievance 2050 (ECF No. 10-3, PageID.134). Plaintiff listed six complaints about his living conditions, and stated that he has been in a "level six environment as retaliation for submitted a sexual harassment at Ofc. Amy Scott." *Id*. This grievance was directed at the warden and was rejected at Steps I, II and III for raising a non-grievable issue. Id. at PageID.131-134. Accordingly, this grievance did not properly exhaust any claim against defendant Scott.

### h. Grievance 2222

Grievance ICF-15-12-2222-28b erroneously appeared as Grievance ICF-15-12-0222-28b in defendant's chart of grievances. *See* Defendant's Brief (ECF No. 10, PageID.65); Defendant's Reply (ECF No. 29, PageID.315). This grievance was rejected at Step I as being unclear or illegible. Defendant's Reply at PageID.315; Grievance 2222 (ECF No. 27-1, PageID.266-267). The rejection was upheld at Steps II and III. To the extent the Step I grievance is legible, it is not directed at defendant Scott and appears to complain about living conditions at the prison. *Id*. Accordingly, this grievance does not properly exhaust any claim against defendant Scott.

### IV. Failure to state a claim

While this Court previously found that "Plaintiff's allegations state at least one claim against Defendant Scott," the Court did not address any particular claim. Opinion at PageID.46. If the Court accepts the recommendations in this report, then the undersigned further recommends that plaintiff's claims arising from grievances 1785, 1978 and 218 be dismissed, because even if plaintiff properly exhausted those grievances against defendant Scott, the claims arising from these grievances are not federal constitutional violations.

The Court has granted plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 1915(e)(2)(B), "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . (B) the action or appeal . . . (ii) fails to state a claim on which relief may be granted[.]" In determining whether a complaint should be dismissed for failure to state a claim under § 1915(e)(2), the Court applies the dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007). *See Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the

Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Here, plaintiff's claims arising from Grievances 1785 and 1978 seek relief for alleged violations of his rights under the Eighth Amendment. The Supreme Court has held that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To prove this claim, the plaintiff must show (1) that the alleged deprivation is "sufficiently serious" (the objective component) and (2) that the responsible prison official had a sufficiently culpable state of mind (the subjective component). *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To establish the objective component, the plaintiff must demonstrate that the prison official's act or omission resulted in the denial of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To establish the subjective component, the plaintiff must demonstrate that the prison official acted with "'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834.

As discussed, plaintiff alleged that defendant Scott harassed him on two occasions: (1) on September 21, 2015, Scott made a "distasteful homosexual joke" referring to plaintiff; and, (2) on October 21, 2015, Scott taunted and harassed plaintiff for about 1 to 1½ minutes.

A prison official's use of harassing or degrading language, although unprofessional and deplorable, does not create intolerable prison confinement in violation of the Eighth Amendment. *See Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v.*

*Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits).

With respect to plaintiff's claim regarding Scott's "distasteful homosexual joke":

> [C]ircuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. Mar. 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain)[.]

*Parker v. Unknown Party*, No. 2:18-cv-55, 2018 WL 2440250 at *4 (W.D. Mich. May 31, 2018). Here, the alleged "distasteful homosexual joke" did not constitute unnecessary and wanton infliction of pain in violation of the Eighth Amendment. Accordingly, plaintiff's claim should be dismissed.

In addition, Scott's statements made on October 21, 2015 were, at most, verbal harassment which did not violate the Eight Amendment. *See Johnson*, 357 F.3d at 546; *Ivey*, 832 F.2d at 954-55. Accordingly, plaintiff failed to allege a cause of action arising from Scott's comments on those dates.

Finally, plaintiff has failed to allege a cause of action for retaliatory transfer as grieved in Grievance 218. To state a claim alleging retaliation for exercising a constitutional right, a plaintiff must show that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that the adverse action was taken (at least in part) because of the protected

conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999). The Sixth Circuit recently addressed the standard applicable to a "retaliatory transfer" claim as follows:

> Generally, "transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights," *Hix v. Tenn. Dep't of Corr.*, 196 Fed. Appx. 350, 358 (6th Cir. 2006) (quoting *Smith v. Yarrow*, 78 Fed.Appx. 529, 543 (6th Cir. 2003)), and because "transfer is merely an ordinary incident of prison life." *Jones v. Caruso*, 421 Fed.Appx. 550, 553 (6th Cir. 2011). In the context of First Amendment retaliation claims, we have recognized an exception for cases in which "foreseeable, negative consequences 'inextricably follow' from the transfer—such as the prisoner's loss of his high-paying job [to pay for his lawyer] and reduced ability to meet with his lawyer." *Id*. (quoting *Siggers–El v. Barlow*, 412 F.3d 693, 701–02 (6th Cir. 2005)). We have not recognized an exception for cases in which the transfer takes a plaintiff further away from friends or family. *See Friedman v. Corr. Corp. of Am.*, 11 Fed.Appx. 467, 471 (6th Cir. 2001) (noting that a transfer to another facility that was further away from visitors was not an adverse action); *but see Pasley v. Conerly*, 345 Fed.Appx. 981, 985 (6th Cir. 2009).
>
> The district court correctly noted that a prison transfer does not constitute an adverse action simply because it makes it more difficult for friends and family to visit the prisoner. *See Friedman*, 11 Fed.Appx. at 471. . . .

*Smith v. Weers*, No. 17-1504, 2018 WL 2087122 at *4 (6th Cir. Jan. 2, 2018).

Here, the only adverse action alleged by plaintiff with respect to the alleged retaliatory transfer is that defendant Scott "had inmate #655917 Goodin place [sic] back in segregation permanently, until Goodin can be transferred to another prison facility farther away from his family that lives in Lansing, Grand Rapids and Detroit." Compl. at PageID.13. Plaintiff's transfer from ICF to MBP "does not constitute an adverse action simply because it makes it more difficult for friends and family to visit the prisoner." *Smith*, 2018 WL 2087122 at *4. Plaintiff has failed to allege a cause of action for retaliatory transfer. Accordingly, plaintiff's retaliation claim arising from Grievance 218 should be dismissed.

16

## V. Recommendation

For these reasons, I respectfully recommend that defendant's motion for summary judgment on the basis of exhaustion (ECF No. 10) be **GRANTED in part** and that all claims be dismissed for lack of exhaustion except for the alleged incidents which occurred on September 21, 2015 (Grievance 1785), October 21, 2015 (Grievance 1978), and February 9, 2016 (Grievance 218).

I further recommend that plaintiff's remaining claims involving the alleged incidents which occurred on September 21, 2015, October 21, 2015, and February 9, 2016 be **DISMISSED** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and that this action be **TERMINATED**.

Dated:  July 27, 2018                                      /s/ Ray Kent
                                                           United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).